UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LABARGE, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>ELUTIA, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 24-cv-1857-MMA-DEB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION OF CROSSCLAIMS**<br><br>[Doc. No. 41] |

　　　On March 28, 2025, Defendant Elutia, Inc., f/k/a Aziyo Biologics, Inc. ("Aziyo") filed a motion to compel arbitration as to Defendant DCI Donor Services Inc.'s, d/b/a Tennessee Donor Services ("DCI") crossclaims. Doc. No. 41. DCI filed a response in opposition, to which Aziyo replied, and the Court took the matter under submission on April 29, 2025, pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Doc. Nos. 47, 52–53. For the following reasons, the Court **GRANTS** Aziyo's motion to compel arbitration.

# I. BACKGROUND

Plaintiffs William and Carol LaBarge (collectively "Plaintiffs") filed their initial complaint on October 15, 2024.  Doc. No. 1.  They subsequently amended the complaint with the Court's leave.  Doc. Nos. 93–94.  In their amended complaint, Plaintiffs assert claims for negligence against Aziyo, negligence against DCI, and loss of consortium against both.  Doc. No. 94 ("FAC") ¶¶ 63–81.  These claims arise from allegations that Plaintiff William LaBarge received a defective spinal implant, manufactured by Aziyo and DCI, that exposed him to tuberculosis and caused illness, injury, emotional distress, and continued pain, among other effects.  FAC ¶¶ 4–9, 38–40, 48–62.  As to Defendants' respective roles, Plaintiffs allege that "Aziyo developed, manufactured, marketed, promoted, distributed, supplied[,] and/or sold Vibone[,] which was implanted into Plaintiff William LaBarge . . . ." *Id.* ¶ 5.  "DCI recovered, processed, supplied[,] and/or sold human tissue for . . . Vibone[,] which was implanted into . . . Plaintiff William LaBarge . . . ." *Id.* ¶ 8.

Before Plaintiffs amended their complaint, DCI filed a crossclaim against Aziyo for breach of contract, express indemnity, equitable indemnity, contribution, and declaratory relief.  *See generally* Doc. No. 10 ("Crossclaim").[1]  Aziyo now moves to compel DCI to arbitrate its crossclaims based upon a "Cadaveric Tissue Recovery and Services Agreement," Doc. No. 45 ("Agreement"), between them, which Aziyo asserts includes an enforceable arbitration requirement.  Doc. No. 41.  Aziyo also argues, as an alternative to its motion to compel arbitration, that the Court should dismiss this claim for lack of subject matter jurisdiction under Rule 12(b)(1).[2]  *Id*.  Though Defendants briefed this motion before Plaintiffs amended the complaint, both agree the briefing is still

---

[1] DCI did not re-file its crossclaims in response to Plaintiffs' amended complaint, but as Defendants agree that their briefing on the Crossclaims is responsive post- amendment, Doc. No. 101, the Court infers that DCI stands on its original crossclaims.

[2] All "Rule" references are to the Federal Rules of Civil Procedure, unless otherwise stated.

responsive to the issues. Doc. No. 101. The Court will address both subject matter jurisdiction and arbitration in turn.

## II. AZIYO'S 12(B)(1) ARGUMENT

Aziyo argues as an alternative to its motion to compel arbitration that the Court should dismiss the counterclaims for lack of subject matter jurisdiction under Rule 12(b)(1). Doc. No. 41 at 14–15.[3] The Court begins its analysis with this argument, as it cannot compel arbitration if it lacks jurisdiction over the claims.

### A. Legal Standard

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.2d at 1242. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1  F.2d 730, 733 (9th Cir. 1979)).  "When the defendant raises a factual attack, the plaintiff
2  must support her jurisdictional allegations with 'competent proof'" and "prov[e] by a
3  preponderance of the evidence that each of the requirements for subject-matter
4  jurisdiction has been met."  *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97
5  (2010), and citing *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).  Generally, "if the
6  existence of jurisdiction turns on disputed factual issues, the district court may resolve
7  those factual disputes itself."  *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at
8  1039–40; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill*
9  *Publ'g*, 594 F.2d at 733).

10  **B.   Discussion**

11      Aziyo argues that the Court lacks subject matter jurisdiction over the counterclaims
12  because they are not yet ripe, and thus presently non-justiciable.  Doc. No. 41-1 at 14–15.
13  Specifically, it argues that "[DCI's] [crossclaim] is patently unripe for review because
14  [DCI] has not submitted to any portion of the alternative dispute resolution process as
15  required by the Agreement."  *Id.* at 15.  "As a result, [DCI] cannot show any concrete
16  injury or imminent harm."  *Id.*  DCI disagrees, arguing in turn that "[t]his Court has
17  subject matter jurisdiction over the issues raised in the crossclaim since . . . there is no
18  mandatory language requiring arbitration and no exclusivity language to render
19  arbitration as the sole dispute resolution or to preclude litigation."  Doc. No. 47 at 7.

20      Aziyo previously sought similar relief based on the argument that "there is no case
21  or controversy between the parties, because Aziyo's purported duty to indemnify can be
22  triggered only by a finding in favor of Plaintiffs in the underlying litigation."  *See* Doc.
23  No. 12.  The Court denied that motion for procedural reasons without assessing the
24  merits.  Doc. No. 33.  Because the Court has an independent duty to ensure proper
25  jurisdiction, and because the parties had opportunity to examine the issue previously, it
26  will consider this argument now.  *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673
27  (9th Cir. 2012) ("[I]t is well established that 'a court may raise the question of subject
28

matter jurisdiction, *sua sponte,* at any time during the pendency of the action, even on appeal.'") (quoting *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002)).

To exercise jurisdiction over a case, the Court must determine the dispute is ripe for review. *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010)

> The ripeness doctrine rests, in part, on the Article III requirement that federal courts decide only cases and controversies and in part on prudential concerns. The ripeness inquiry is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. To determine whether a case is ripe, we consider two factors: the fitness of the issues for judicial decision, and the hardship to the parties of withholding court consideration.

*Addington*, 606 F.3d at 1179 (internal quotation marks and citations omitted).

Rule 13, however, provides that a "crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Fed. R. Civ. P. 13(g). Where the action's central claims are ripe, then, a crossclaim "for indemnification or contribution need not be mature at the time of pleading." *Garot v. Cnty. of San Diego,* No. 19-CV-01650-H-AGS, 2021 WL 51415 *4 (S.D. Cal. Jan. 5, 2021) (collecting cases); *see Glens Falls Indem. Co. v. U.S. ex rel. & to Use of Westinghouse Elec. Supply Co.*, 229 F.2d 370, 373 (9th Cir. 1955) ("Claims under [Rule 13 or 14] must arise out of the transaction or occurrence on which the original action is based and . . . can be asserted even if liability is only contingent or a mere possibility"). Similarly, some courts have taken the approach that "a counterclaim that is contingent only on the outcome of the plaintiff's claims in the same action is ripe" even where a plainitff's claims are yet unresolved. *Rivas v. Coverall N. Am., Inc.*, No. SACV181007JGBKKX, 2019 WL 6332245 *3 (C.D. Cal. July 12, 2019); *cf. Springs v. First Nat. Bank of Cut Bank*, 835 F.2d 1293, 1296 (9th Cir. 1988).

Here, DCI alleges that "[Aziyo's] failure and refusal indemnify, defend, and hold harmless [DCI] in connection with the claims, demands, and losses arising out of Plaintiffs' underlying [c]omplaint[] constitutes a breach of the very terms of the

Agreement." Crossclaim ¶ 8. Thus, the crossclaim arises from the same transaction or occurrence as the original cause of action—Plaintiffs' allegedly defective transplant. As DCI's claims are therefore a proper crossclaim in Plaintiffs' action, the Court **DENIES** Aziyo's motion as to its Rule 12(b)(1).

As to the related argument that the arbitration issue is not "ripe" because of language requiring informal resolution or mediation, that issue does not truly involve standing or jurisdiction, but instead rests on whether the parties entered into an arbitration agreement and whether such an agreement requires arbitration at this time. Thus, the Court will address it below.

### III. AZIYO'S MOTION TO COMPEL ARBITRATION

As the Court has jurisdiction, it turns to Aziyo's motion to compel arbitration.

**A.   Legal Standard**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* The FAA espouses a general policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts resolve any "ambiguities as to the scope of the arbitration clause. . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476–77 (1989).

When determining whether to compel a party to arbitrate, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted). If the

Court finds that the answers to those questions are "yes," it must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

In assessing a purported arbitration agreement, "the 'fundamental principle [is] that arbitration is a matter of contract . . . .'" *AT&T Mobility*, 563 U.S. at 339 (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, courts must apply ordinary state law principles in determining an arbitration agreement's validity. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *AT&T Mobility*, 563 U.S. at 339–41.

**B.  Discussion**

Aziyo argues that the Court should compel arbitration because: (1) the Agreement contains an enforceable arbitration clause; and (2) the Agreement encompasses DCI's crossclaims. *See generally* Doc. No. 41-1. DCI argues in opposition that: (1) the Agreement does not strictly require arbitration nor prohibit litigation; and (2) the motion to compel is premature because the parties have not engaged in required predicate attempts at resolution. *See generally* Doc. No. 47. The parties do not dispute the Agreement's actual language or its validity, but merely the relevant clause's interpretation. *See generally* Doc. Nos. 41-1, 47. Likewise, DCI does not appear to contest that, if the Agreement requires arbitration, this action would fall under its purview. *See generally* Doc. No. 47.

As a preliminary matter, Aziyo and DCI agree that Maryland law governs the Agreement, based on the choice-of-law clause within. Doc. No. 41-1 at 9; Doc. No. 47 at 4; Agreement at 10. Seeing no reason to find otherwise, the Court will apply Maryland

law. *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. 2016) (discussing choice-of-law provisions and district courts in California); *Ferguson*, 298 F.3d 778 at 782.

"Maryland follows the law of objective contract interpretation." *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 829 A.2d 540, 546 (Md. Ct. App. 2003) (collecting cases); *Freedman v. Comcast Corp.*, 988 A.2d 68, 76 (Md. Ct. Special App. 2010); *Ford v. Antwerpen Motorcars Ltd.*, 117 A.3d 21, 25 (Md. Ct. App. 2015). "A court construing an agreement under this objective test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Freedman*, 988 A.2d at 76 (quoting *Koons Ford of Balt., Inc. v. Lobach*, 919 A.2d 722, 728 (Md. Ct. App. 2007)); *see also Sy-Lene of Washington, Inc.*, 829 A.2d at 546–47. "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Freedman*, 988 A.2d at 76 (quoting *Koons Ford of Balt., Inc.*, 919 A.2d at 728).

The relevant language, found in § 7.4 of the Agreement, is as follows:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the Parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the Parties shall consult and negotiate with each other in good faith and, recognizing their mutual interests and acknowledging the purpose of the Agreement, attempt to reach a just and equitable solution satisfactory to both Parties. If the parties are unable to reach a solution, the Parties agree to submit the dispute to a mediator, selected and agreed upon by both Parties. If such mediation is unsuccessful in the resolution of the dispute, either Party may, upon notice to the other Party, demand that the dispute be resolved by arbitration in accordance with the Rules of the American Arbitration Association. Each Party hereby consents to any such dispute being so resolved, and agrees that any court of competent jurisdiction may enter any judgment

>rendered by the Arbitrator(s) as a final judgment, binding on both Parties.

Agreement at 10.

According to Aziyo, § 7.4 "[b]y its plain language, . . . covers [DCI's] cross-claims, all of which are rooted in conditional claims that, to the extent Aziyo breached the Agreement, it may be obligated to indemnify [DCI] under the terms of the Agreement" and that "[a]s a result, [DCI's] crossclaims are subject to the Agreement's alternative dispute resolution procedure and thus are not properly asserted in this Court." Doc. No. 41-1 at 13–14.

DCI, to the contrary, reads the provision to:

>merely provide[] options and steps to deal with disputes . . . . The parties choice of verbiage must be considered. The first step uses the word "shall" negotiate in good faith. The second step indicates [they] agree to seek mediation. The third step uses the word "may" seek arbitration. The use of the permissive term "may" indicates the intent to only propose arbitration as an option, not as a requirement, and only after other resolution attempts have failed. Therefore, any decision to forgo arbitration does not prevent [DCI] from pursuing its [crossclaim] . . . .

Doc. No. 47 at 5. Aziyo rejects this reading. *See* Doc. No. 52 at 2–5.

The language at issue here is not novel. The court in *Freedman v. Comcast Corp.* examined a nearly identical term, rejecting an argument that "the clause 'you or Comcast may elect to arbitrate that [d]ispute' implies that, because 'Appellant acted first, electing to litigate in court,' the dispute must be heard in court." 988 A.2d at 78. Instead, that court found that "the plain and common-sense reading of the clause . . . is that if either party elects to arbitrate the dispute, it must be arbitrated." *Id.*; *see also McCrea v. Drs. Copeland, Hyman & Shackman, P.A.*, 945 F. Supp. 879, 881–82 (D. Md. 1996) (assessing similar language and collecting cases). Thus, under Maryland law, this usage of "may" is not permissive, as DCI argues, but instead renders arbitration mandatory

upon a party's timely request.[4]  Additionally, as Aziyo argues, it appears that at least one other district court has reached this same conclusion in a dispute between DCI and Aziyo over this language.  *See Wilcox v. Aziyo Biologics, Inc.*, No. 1:23-CV-619, 2023 WL 11717093 *2–3 (E.D. Va. Aug. 30, 2023).  As the language here is the same, the Court adopts the same interpretation.

      DCI's arguments to the contrary are unconvincing.  Its interpretation, that the arbitration clause is permissive and allows for litigation instead of arbitration, requires contorting the clause and rendering it meaningless.  Were the Court to interpret the Agreement accordingly, neither party could truly invoke arbitration, they could merely suggest it subject to the other's agreement.  Specifically identifying arbitration as a means of resolution then serves no purpose, as any other resolution would ostensibly be equally available once mediation fails.  DCI's version also renders the notice and consent language of the arbitration clause mere surplusage, despite a plain reading imposing substantive duties and consents.  *See* Agreement at 10 ("[E]ither Party may, upon notice to the other Party, demand that the dispute be resolved by arbitration . . . .  Each Party hereby consents to any such dispute being so resolved . . . .").  This is inconsistent with § 7.4's unambiguous language.  In short, the Agreement unambiguously requires arbitration, and DCI's argument cannot withstand scrutiny.  *See also Freedman*, 988 A.2d at 78 ("We will not discuss every permutation because it suffices to say that the clause gives *either* party the option to compel *arbitration,* but . . . *neither* party the option to compel *litigation*.") (emphasis original).

      DCI also argues that "Aziyo has not engaged in informal negotiations, has never responded to [DCI]'s tender . . , has not requested to mediate," nor made demands for arbitration.  Doc. No. 47 at 6.  According to DCI, "a notice to seek arbitration is specifically reserved after exhaustion of informal negotiations and failure of resolution

---

[4] Courts interpreting similar language according to California law have agreed.  *See, e.g.*, *Boudreau v. Am. Home Shield Corp.*, No. 23-CV-681-WQH-BGS, 2024 WL 2786048 *4–5 (S.D. Cal. Feb. 28, 2024) (collecting cases).

through mediation" and thus Aziyo may not demand arbitration. *Id.* Aziyo argues that DCI, not itself, has refused to engage and negotiate as the Agreement requires. Doc. No. 41-1 at 8; Doc. No. 52 at 5–6. Regardless of who failed to satisfy their duties to whom, "any issues about whether those pre-conditions to arbitration have been satisfied are to be decided by the arbitrator, not this Court." *Wilcox*, 2023 WL 11717093 at *3 (*citing John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 556–58 (1964)); *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing same). Thus, the Court **GRANTS** Aziyo's motion to compel arbitration.

## IV. Conclusion

For the foregoing reasons, the Court determines it has jurisdiction over the case and **GRANTS** Aziyo's motion to compel arbitration. As liability is contingent on the outcome of Plaintiffs' case, the Court elects to **STAY** litigation of the crossclaims until that matter is resolved, upon which it **COMPELS** the parties to complete the dispute resolution processes according to the Agreement's terms as discussed above—including arbitration—should any case and controversy remain between them stemming from Plaintiffs' claims. The stay applies only to the crossclaims, not to any other claims in this action. *See* 9 U.S.C. §§ 3–4.

**IT IS SO ORDERED**.

Dated: August 25, 2025

HON. MICHAEL M. ANELLO
United States District Judge